# 14-1105

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

UNION CENTRAL LIFE INSURANCE COMPANY,

Plaintiff - Counter Defendant - Cross Defendant - Appellee,

v.

HEATHER A. BERGER,

Defendant - Counter Claimant - Cross Claimant - Appellant,

RISE K. CROSS,

Defendant - Counter Claimant - Cross Claimant - Cross Defendant - Appellant,

v.

CYNTHIA STEINMETZ, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF WAYNE A. CROSS,

Defendant - Cross Claimant - Counter Claimant - Cross Defendant - Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

---

## BRIEF OF DEFENDANT - CROSS CLAIMANT - COUNTER CLAIMANT-
## CROSS - DEFENDANT - APPELLEE

Kim E. Rinehart
WIGGIN AND DANA LLP
One Century Tower
P.O. Box 1832
New Haven, CT 06508-1832
(203) 498-4400

*Attorney for Appellee*
*Cynthia Steinmetz*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... iii

INTRODUCTION ......................................................................... 1

ISSUES PRESENTED FOR REVIEW .................................................. 4

COUNTERSTATEMENT OF THE CASE ............................................. 5

A.  The Divorce Settlement Agreement ............................................ 5

B.  Mr. Cross Fulfilled His Obligations Under the Settlement Agreement .......... 7

C.  Mr. Cross Turns 62 and Names Ms. Steinmetz Beneficiary of the Subject Policy ..................................................................... 9

D.  Ms. Cross's Attempt to Claim the Subject Policy ......................... 12

E.  Procedural History .............................................................. 14

F.  The District Court Determines Ms. Steinmetz Is Entitled to the Proceeds of the Policy and that Ms. Cross Breached the Settlement Agreement ........ 15

G.  The District Court Awards Attorneys' Fees and Costs .................... 18

H.  Final Judgment is Entered ..................................................... 19

SUMMARY OF ARGUMENT ......................................................... 19

ARGUMENT ............................................................................. 21

I.  The District Court Properly Awarded the Subject Policy Proceeds to Steinmetz ........................................................................ 21

   A.  Standard of Review ........................................................... 21

   B.  Interpleader Actions Are Equitable Proceedings ...................... 21

C.    The District Court Was Not Required to Ignore the Settlement Agreement in Determining The Proper Recipient of the Subject Policy ........................................................................22

D.    Ms. Steinmetz Is Entitled to the Subject Policy's Proceeds Under the Doctrine of Substantial Compliance .........................................................27

    1.    The Doctrine of Substantial Compliance………………… 27

    2.    Mr. Cross Intended to Name Ms. Steinmetz the Beneficiary of the Subject Policy and Took Multiple Affirmative Acts to Accomplish the Change ..........................................................28

    3.    Mr. Cross Substantially Complied with the Subject Policy .....31

E.    The District Court Properly Found that Ms. Cross Waived Her Claim on the Subject Policy Through the Settlement Agreement ...................36

    1.    Ms. Cross Waived Her Right to the Subject Policy Under the Settlement Agreement ...............................................................36

    2.    The Waiver Is Sufficiently Explicit .........................................40

II.    Ms. Cross Breached the Settlement Agreement, Entitling the Estate to Fees and Costs, as Well as Specific Performance and/or Damages.........45

    A.    Standard of Review....................................................................45

    B.    The District Court Correctly Found that Ms. Cross Breached the Settlement Agreement ...............................................................45

    C.    Ms. Cross's Breach Also Provides an Alternative Ground for Awarding the Subject Policy Proceeds to Steinmetz ...............................49

III.    Should the Court Not Affirm, Remand Is Required On Claims Not Reached or Denied As Moot By the District Court .....................................50

    CONCLUSION ...................................................................52

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Airlines, Inc. v. Block*,
905 F.2d 12 (2d Cir. 1990) ...............................................................21

*In re Amarante*,
829 N.Y.S.2d 859 (N.Y. Sur. 2006) ..................................................24

*Battery Steamship Corp. v. Refineria Panama, S.A.*,
513 F.2d 735 (2d Cir. 1975) .............................................................22

*Cable v. Prudential Ins. Co. of Am.*,
89 A.D.2d 636 (3d Dep't 1982)...................................................27, 31

*Chapman v. Abbot*,
251 S.W.3d 612 (Tex. Ct. App. 2007)........................................25, 26

*Conn. Gen. Life Ins. Co. v. Boni*,
48 A.D.2d 621 (1st Dep't 1975) ........................................................30

*Curley v. Giltrop*, 68 N.Y.2d 651 (1986)....................................37, 38, 42

*Deep Woods Holdings, L.L.C. v. Sav. Deposit Ins. Fund of Republic of
Turkey*, 745 F.3d 619 (2d Cir. 2014) .........................................21, 45

*Diversified Inv. Advisors, Inc. v. Baruch*,
793 F. Supp. 2d 577 (E.D.N.Y. 2011)........................................40, 43

*Doyle v. Sullivan*,
176 A.D.2d 55 (4th Dep't 1992).................................................46, 47

*Eredics v. Chase Manhattan Bank*, N.A.,
100 N.Y.2d 106 (2003) .....................................................................23

*In re Estate of Sbarra*,
17 A.D.3d 975 (3d Dep't 2005)........................................................42

*In re First Cent. Fin. Corp.*,
377 F.3d 209 (2d Cir. 2004) .............................................................23

*Gallo v. Gallo*,
    6 Misc. 3d 628 (N.Y.Sur.Ct. 2004) ............................................................... 43, 44

*Hallingby v. Hallingby*,
    453 F. App'x 121 (2d Cir. 2012) .................................................... 36, 37, 40, 48

*John Hancock Mut. Life Ins. Co. v. McManus*,
    669 N.Y.S.2d 320 (2d Dep't 1998) ........................................................... 30

*Kilgus v. Minnesota Mut. Life Ins.*,
    No. 05-7279, 2006 WL 2472929 (N.D. Ohio Aug. 24, 2006) .......................... 25

*Lamarche v. Metro. Life Ins. Co.*,
    236 F. Supp. 2d 34 (D. Me. 2002) ................................................... 26, 31, 34

*Lincoln Life & Annuity Co. of New York v. Caswell*,
    31 A.D.3d 1 (1st Dep't 2006) ............................................................... 27

*Lopez v. Massachusetts Mut. Life Ins. Co.*,
    170 A.D.2d 583 (2d Dep't 1991) ...................................................... 27, 30

*Marine Midland Bank-S. v. Thurlow*,
    53 N.Y.2d 381 (1981) ...................................................................... 22

*McCarthy v. Aetna Life Ins. Co.*,
    92 N.Y.2d 436 (1998) ............................................................... *passim*

*MetLife Life & Annuity Co. of Connecticut v. Sobie*,
    326 Fed. App'x 3 (2d Cir. 2009) ....................................................... 27

*Mohawk Airlines, Inc. v. Peach*,
    61 A.D.2d 346, *lv. denied*, 44 N.Y.2d 838 (1978) ............................... 44

*Molfetta v. Connecticut Gen. Life Ins. Co.*,
    138 N.Y.S.2d 168 (N.Y. Sup. Ct. 1954) ............................................. 26

*Naginsky v. State Farm Life & Acc. Assur. Co.*,
    231 A.D.2d 695 (2d Dep't 1996) ...................................................... 46

*Nat'l Ben. Life Ins. Co. v. Kelly*,
    554 N.Y.S.2d 523 (1st Dep't 1990) ................................................... 23

*Primerica Life Ins. Co. v. Roemer*,
 No. 2810/2001, 2003 WL 21709724 (N.Y. Sup. Ct. July 16, 2003)............43, 44

*Reiter v. MTA New York City Transit Auth.*,
 457 F.3d 224 (2d Cir. 2006) ..............................................................45

*Rogers v. Rogers*,
 63 N.Y.2d 582 (1984) ........................................................................23

*Schoenholz v. New York Life Ins.Co.*,
 234 N.Y. 24 (1922) ............................................................................36

*Silber v. Silber*,
 99 N.Y.2d 395 (2003) ........................................................23, 24, 41, 42

*Smith v. Pathmark Stores, Inc.*,
 57 A.D.3d 759 (2d Dep't 2008)..........................................................44

*Strianese v. Metropolitan Life Ins. Co.*,
 221 A.D. 81 (1st Dep't 1927) ............................................................36

*Teachers Ins. and Annuity Assoc. of America v. Bernardo*,
 683 F. Supp. 2d 344 (E.D. Pa. 2010).....................................31, 33, 34

*Traders' Nat'l Bank of Rochester v. Laskin*,
 238 N.Y. 535 (1924) ..........................................................................23

*United States v. Lauersen*,
 648 F.3d 115 (2d Cir. 2011) ..............................................................43

*Valentin v. New York City Police Pension Fund*,
 792 N.Y.S.2d 22 (1st Dep't 2005) .....................................................24

*W.W.W. Assocs. v. Giancontieri*,
 77 N.Y.2d 157, 565 N.Y.S.2d 440 (1990).........................................22

*William Penn Life Ins. Co. of New York v. Viscuso*,
 569 F. Supp. 2d 355 (S.D.N.Y. 2008) ........................................21, 30

## Other Authorities

Charles A. Wright *et al.*, 7 Fed. Prac. & Proc. Civ. § 1709 (3d ed.)......................21

## INTRODUCTION

Appellant Rise K. Cross seeks a $700,000 windfall. Ms. Cross entered into a divorce settlement agreement ("Settlement Agreement") with Wayne A. Cross in 2000. The parties' intent was clear: Mr. Cross was to provide $2.2 million in life insurance for Ms. Cross's benefit until he turned 62 years old and thereafter $1 million until he turned 75. The Settlement Agreement unambiguously provided that the life insurance was for Ms. Cross's "irrevocable benefit" only until the relevant dates specified therein. And Ms. Cross affirmatively relinquished any other current or future rights she had to the assets or estate of Mr. Cross except as specified in the Settlement Agreement as completely as if she "predeceased" Mr. Cross and promised that if any assets nevertheless fell into her possession, she would turn them over to Mr. Cross's Estate. Ms. Cross agreed to execute any and all documents necessary to effectuate the purpose of the Settlement Agreement and her relinquishment of claims.

Mr. Cross honored his obligations under the Settlement Agreement. Until he turned 62, he maintained three insurance policies in the total amount of $2.2 million for the irrevocable benefit of Ms. Cross[1]: a $1 million policy, a $700,000

_____

[1] The Settlement Agreement also required Mr. Cross to name Appellee Heather Berger as contingent beneficiary and he did so. However, since Rise Cross, the primary beneficiary, survived Wayne Cross, Ms. Berger's contingent interest never ripened and she has no interest in this appeal. *See* Appellants' Br. at 12 n.6. Thus, this brief discusses only Ms. Cross's claims and the facts relevant thereto.

policy, and a $500,000 policy.  When he turned 62, he continued to maintain the $1 million policy for the benefit of Ms. Cross, he allowed the $500,000 policy to lapse, and he changed the beneficiary designation on the $700,000 policy (the "Subject Policy") to his wife, Appellee Cynthia Steinmetz.  Appellee Union Central Life Insurance Company ("Union Central"), which had a copy of the relevant sections of the Settlement Agreement in its files, twice confirmed to Mr. Cross that the beneficiary designation on the Subject Policy had been changed to Ms. Steinmetz.  Mr. Cross paid premiums on the Subject Policy until his death three years later, believing that the policy proceeds would be paid to his wife, Cynthia Steinmetz.

Mr. Cross died at the age of 65.  Ms. Cross received the $1 million insurance payment for which she bargained.  But she did not fulfill her end of the bargain.  Instead, she asserted a claim to the Subject Policy too, arguing that Mr. Cross's beneficiary change was ineffective because her consent was not obtained.  Both Union Central and Ms. Steinmetz, in her capacity as Executrix of the Estate of Wayne A. Cross, requested that she renounce this claim and permit the Subject Policy to be paid to Ms. Steinmetz, the intended beneficiary.  She refused.

Union Central filed an interpleader action against Ms. Cross, Ms. Berger, and Ms. Steinmetz, individually, and as Executrix of the Estate of Wayne A. Cross ("the Estate").  Union Central sought a determination of the rightful beneficiary of

2

the Subject Policy, and also asserted claims for reformation of the Subject Policy to name Ms. Steinmetz as beneficiary if necessary. Ms. Cross, Ms. Berger, Ms. Steinmetz, and the Estate each asserted contractual and tort counterclaims against Union Central. Ms. Steinmetz and the Estate also asserted cross-claims against Ms. Cross for breach of the Settlement Agreement, unjust enrichment and tortious interference. The parties filed cross-motions for summary judgment.

On September 20, 2012, the United States District Court for the Southern District of New York (Hon. Paul G. Gardephe) issued a thorough opinion holding that Ms. Steinmetz was entitled to the $700,000 proceeds of the Subject Policy. Judge Gardephe found that Mr. Cross's intent to change the beneficiary of the Subject Policy was "crystal clear" and that he had substantially complied with the terms of the policy when naming Ms. Steinmetz its new beneficiary. The District Court also held that Ms. Cross had expressly waived her rights to the proceeds of the Subject Policy under the Settlement Agreement. Finally, the District Court found that Ms. Cross had breached multiple terms of the Settlement Agreement by asserting claims to the Subject Policy and refusing to sign documents to permit payment of the proceeds to Ms. Steinmetz. Because the Court had already awarded the Subject Policy proceeds to Ms. Steinmetz on other grounds, it limited its discussion of damages for Ms. Cross's breach to the payment of the Estate's

attorneys' fees and costs pursuant to a fee-shifting provision in the Settlement Agreement. This Court should affirm.

## ISSUES PRESENTED FOR REVIEW

1. Whether the District Court's judgment that Ms. Steinmetz was entitled to the proceeds of the Subject Policy can properly be affirmed where (1) Mr. Cross substantially or fully complied with the requirements for naming Ms. Steinmetz the beneficiary under the Subject Policy; and (2) Ms. Cross waived any right she may have had to the proceeds of the Subject Policy in the Settlement Agreement.

2. Whether the District Court's judgment should be affirmed where the District Court properly found that Ms. Cross breached the Settlement Agreement and (1) awarded the Estate its fees and costs under the agreement's fee shifting provision; and (2) where the breach of contract finding could also have supported an award of specific performance requiring Ms. Cross to execute any documents necessary to transfer the Subject Policy to Ms. Steinmetz, or, alternatively, for an award of money damages equal to the amount of the Subject Policy?

## COUNTERSTATEMENT OF THE CASE

### A. The Divorce Settlement Agreement

Wayne Cross and Rise Cross divorced in 2000. JA212-253. Their divorce was a "difficult" one. JA787. As Ms. Cross testified, from the date of their divorce until Mr. Cross's death approximately ten years later, "99 percent of the time, . . . there was no communication. I didn't even know where he lived." JA790.

The parties' August 18, 2000 divorce settlement agreement ("Settlement Agreement") spelled-out in detail the parties' obligations, including those regarding life insurance. JA212-253. Under Article IX of the Settlement Agreement, Mr. Cross was required to maintain $2.2 million in life insurance for the "irrevocable benefit of [Ms. Cross] *until her death or until the Defendant is age 62.*" JA227 (emphasis added). After that, he was required to maintain $1 million in life insurance for her "irrevocable benefit" until her death or until he turned 75. *Id.*[2]

---

[2] The Settlement Agreement provides:

> 1. The Defendant [Wayne Cross] shall maintain and keep in full force and effect until age 62 insurance on his life having an aggregate death benefit of Two Million Two Hundred Thousand ($2,200,000.00) Dollars which shall be for the irrevocable benefit of the Plaintiff until her death or until the Defendant is age 62 and thereafter for the irrevocable benefit of the parties' child surviving the Defendant until the Defendant is age 62.

5

As Ms. Cross admitted, Mr. Cross "did not have to maintain and keep in full force after the age of 62 the 700[,000] [policy] or the $500,000"; "he's only supposed to maintain and keep in full force . . . the million dollars . . . , that was what was supposed to stay in effect." JA788.

Aside from the rights specifically enumerated in the Settlement Agreement – including the specifically delineated life insurance rights set forth above – Ms. Cross relinquished all rights and claims to the current or future property of Mr. Cross and would be treated as if she predeceased Mr. Cross under Article XV ¶ 1:

> Except as otherwise provided for herein, and except grounds for divorce, [Ms. Cross] agrees to release, and hereby does release, any and all claims of [Ms. Cross] to or upon the property of [Mr. Cross], whether real or personal and whether now owned or hereafter acquired, to the end that he shall have free and unrestricted right to dispose of his property now owned or hereafter acquired, free from any claim or demand of [Ms. Cross] and so that his estate and all income therefrom derived or to be derived shall go and belong to the person or persons who become entitled thereto by gift, devise, bequest, intestacy, administration or otherwise, as if [Ms. Cross] had died during the lifetime of [Mr. Cross].

JA238. Under Article XV ¶ 2, Ms. Cross also agreed to "execute any and all documents which shall be required . . . in order that such renunciation and

---

2. At and after the Defendant is age 62, the Defendant shall maintain and keep in full force and effect insurance until age 75 on his life having an aggregate death benefit of One Million ($1,000,000.00) Dollars which shall be for the irrevocable benefit of the Plaintiff until the sooner to occur of her death or the Defendant is age 75 and thereafter for the irrevocable benefit of the parties' child surviving the Defendant until the Defendant is age 75.

JA227.

disclaimer shall be effective," *id.*, and further agreed that in the event she "receive[d] any right, title or interest in any property so renounced or disclaimed for any reason whatsoever [she would] immediately transfer all such right, title or interest to the estate of [Mr. Cross]," *id.* Finally, under Article XVIII ¶ 5, she agreed to execute any documents "and perform any acts that the other party may reasonably request for the purpose of giving full force and effect to the provisions of this Agreement." JA247. The Settlement Agreement survives the death of the parties and the benefits and obligations created by it "shall inure to the benefit of their respective heirs, executors, administrators, legal representatives and assigns." JA247.

**B. Mr. Cross Fulfilled His Obligations Under the Settlement Agreement.**

Mr. Cross worked with Debra Slavutin, a broker authorized to sell Union Central policies, to obtain the life insurance necessary to comply with the Settlement Agreement. JA836-37. With her assistance, he procured the $700,000 Union Central policy T000018940 that is the subject of this appeal (the "Subject Policy"), as well as a $1 million Union Central policy, and he changed the beneficiary designation on an existing $500,000 Mass Mutual policy. JA838-42; JA1462; JA643-44. Union Central issued the Subject Policy in September 2000. JA53-65.

When Ms. Cross's attorney complained that "the insurance policies must state that Rise is the irrevocable beneficiary" in order to comply with the Settlement Agreement, JA631, Mr. Cross revised the beneficiary designation to add the words "irrevocable beneficiary," JA67-68.[3]  The Subject Policy states that an irrevocable beneficiary cannot be changed without consent, but does not specify the form that the consent must take or indicate whether the insured or Union Central is responsible for obtaining consent. JA60.

In 2001, Mr. Cross requested that Union Central transfer ownership of the Subject Policy to Ms. Cross.  JA617-18.  Ms. Cross declined to accept the change and, in the course of discussions with Union Central on this issue, she sent to Union Central a copy of the portion of the Settlement Agreement pertaining to life insurance and explained her role as beneficiary thereunder.  JA622; JA888-94.  As a result, Union Central was aware of the relevant terms of the Settlement Agreement and the reason Ms. Cross was listed as an "irrevocable beneficiary" of the Subject Policy.

_____

[3] Ms. Cross's assertion that Mr. Cross's submission of this form "for whatever reason he may have had at the time" made it "crystal clear" that he intended to make Ms. Cross's interest permanent, Appellants' Br. at 23-24, is nonsense.  Mr. Cross made the change to comply with Ms. Cross's counsel's claim that the Settlement Agreement required it, not to fundamentally re-write that agreement, which stated that the insurance was only "irrevocable" until Mr. Cross turned 62.

### C. Mr. Cross Turns 62 and Names Ms. Steinmetz Beneficiary of the Subject Policy.

Mr. Cross turned sixty-two on July 22, 2007. JA612; JA645. Shortly after, he took steps to reduce his life insurance coverage for the benefit of Ms. Cross from $2.2M to $1M, as provided in the Settlement Agreement. JA645 (citing JA844). To accomplish this, he (1) maintained in full force and effect the $1 million Union Central policy for the benefit of Ms. Cross; (2) allowed the $500,000 Mass Mutual policy to lapse[4]; and (3) executed and submitted to Union Central a beneficiary designation change form naming Ms. Steinmetz as the beneficiary of the Subject Policy in the amount of $700,000. JA645 (citing JA742; JA753; JA763-64; JA844; JA864-66).

Mr. Cross met with Ms. Slavutin, his insurance broker and an authorized agent for Union Central, to discuss these actions. JA645 (citing JA844). With respect to the Subject Policy, Ms. Slavutin provided him with a beneficiary designation change form and completed the top portion of the form. JA646 (citing JA845-46). The form did not state that the signature of an irrevocable beneficiary was required on the form. JA864-66. Mr. Cross filled out the bottom of the form

---

[4] Mr. Cross also submitted a change of beneficiary designation under the Mass Mutual policy, but Mass Mutual indicated that it would require a court order (not just consent by Ms. Cross) to effect the change. JA1485. Mr. Cross allowed the policy to lapse. As Ms. Slavutin, the broker who advised Mr. Cross, testified, she found nothing remarkable about the fact that two insurance companies had different protocols regarding beneficiary changes. JA916.

9

and signed it on October 3, 2007 and Ms. Slavutin's office sent it to Union Central on or about October 8, 2007. JA646 (citing JA845-46; JA864-66; JA846-47). Upon receipt of the change request, Union Central reviewed the request and, on October 15, 2007, wrote back to Mr. Cross indicating that Mr. Cross needed to sign in an additional location and requesting the spelling of Cynthia Steinmetz's name. JA646 (citing JA868). Union Central did not notify Mr. Cross of any other deficiencies with respect to his request. JA646 (citing JA868; JA765; JA826).

On October 19, 2007, Mr. Cross added the missing signature and Ms. Slavutin resubmitted the change request to Union Central. JA646 (citing JA870-72). On October 22, 2007, Mr. Cross provided the proper spelling of Cynthia Steinmetz's name and again executed and resubmitted the request to Union Central. JA646 (citing JA874-78). On October 30, 2007, Union Central sent confirmation of the change to Mr. Cross and Ms. Slavutin, stating:

> Your request for a change in the beneficiary on your policy has been completed as shown below. To confirm that the change has been made and to provide you with a permanent record, please keep this letter with your policy.
>
> Primary Beneficiary(ies):     Cynthia A. Steinmetz, Spouse
> Contingent Beneficiary(ies):   None

JA647 (citing JA880). Union Central also recorded the completion of the change of beneficiary in Union Central's "Supplemental Title/BA Record Sheet." JA647 (citing JA882). On November 2, 2007, another Union Central employee sent a

second confirmation to Mr. Cross. JA647 (citing JA884). Ms. Slavutin testified that upon receiving the multiple confirmations, she had "[n]o doubt in my mind" that the beneficiary change had been completed. JA917. As Union Central testified, the purpose of sending a confirmation of beneficiary change is "[t]o confirm to the interested parties the fact that their request has been completed." JA647-48 (citing JA822).

According to Randy Carlson, the manager of Union Central's contract change unit, the Union Central representatives who reviewed the change request should have reviewed the policy file to determine whether any additional consents were necessary to effectuate the change and to verify that all required information and consents were provided. JA652 (citing JA823-25; JA827; JA829-30). Based on his review, Mr. Carlson testified that either the file was not reviewed in 2007 when the change of beneficiary was processed or the change of beneficiary was confirmed under the understanding that it was appropriate given the terms of the Settlement Agreement between Mr. and Ms. Cross, which Union Central had in its files. JA652 (citing JA827-28; 831; 833); *see also* Union Central Opp. to Summary Judgment at 13, Docket # 84, (stating that the "Settlement Agreement, in and of itself, provides her consent to the 2007 beneficiary Designation change").

After receiving Union Central's multiple confirmations that the beneficiary had been changed to Ms. Steinmetz, Mr. Cross continued to pay premiums on the

11

Subject Policy. JA648 (citing JA764-65; JA32; JA264-65). As Union Central has

acknowledged, Mr. Cross "reasonably relied, understood and believed that he

effectuated a change in beneficiary naming Steinmetz as confirmed by Union

Central." JA33. Union Central never informed Mr. Cross, from the date of the

beneficiary change until his death, that there was any defect in the change to Ms.

Steinmetz. JA648 (citing JA765).

### D. Ms. Cross's Attempt to Claim the Subject Policy.

Mr. Cross died on August 25, 2010. JA612. When Ms. Cross learned of his

death, she called Union Central to confirm that she would receive the $1 million

policy. JA649 (citing JA791). In that call, Ms. Cross did not inquire about the

Subject Policy because she didn't know it still existed. JA649 (citing JA791).[5]

Following this call, Union Central's General Counsel, John Lucas, contacted Ms.

Cross to discuss the claims process for the $1 million policy. He also told her that

Union Central had made a "clerical error" with respect to the Subject Policy in

failing to obtain her signature prior to confirming the beneficiary change in 2007.

JA649 (citing JA792-94). It was not until the call with Mr. Lucas that Ms. Cross

---

[5] Ms. Cross suggests that she "arguably" had the right to continue paying
premiums on the Subject Policy after Mr. Cross turned 62. Appellants' Br. at 24
n.9. But she admits that three years passed after Mr. Cross turned 62 and she never
attempted to pay the premiums, instead assuming that the policy had lapsed.
Further, while Ms. Cross may have had the right to purchase additional insurance
on Mr. Cross's life, nothing in the Settlement Agreement gave her the right to
continue the Subject Policy after Mr. Cross turned 62. JA229.

realized that Mr. Cross had not let the policy lapse and that she was – in her words – "still in the game." JA649 (citing JA799). After the call, Mr. Lucas sent Ms. Cross a release form to sign to allow the proceeds of the Subject Policy to be paid to Ms. Steinmetz. JA649 (citing JA896-98). Ms. Cross filed a Notice of Claim on the $1 million policy, but not on the Subject Policy. JA650 (citing JA742; JA753; JA763; JA744; JA755; JA766). Union Central paid Ms. Cross $1 million, plus interest on October 1, 2010. JA650 (citing JA742; JA753; JA763).

Union Central repeatedly attempted to obtain Ms. Cross's consent to pay the proceeds of the Subject Policy to Ms. Steinmetz (a change that Union Central had confirmed to Mr. Cross was complete). JA650 (citing JA896-99; JA792-93). After "stalling" until she had the proceeds from the $1 million policy in hand, Ms. Cross then refused to sign anything. JA797 ("[A]ll along I was stalling because I wanted to have the million dollars in the bank. . . . I kept the 'probablys' going until the date I finally said no, absolutely not."). Ms. Cross admits that the Settlement Agreement was the sole source of Mr. Cross's obligation to obtain the Subject Policy. JA789. And she concedes that, under the Settlement Agreement, Mr. Cross was not required to continue to maintain the Subject Policy after he turned 62 and could have allowed the policy to lapse. JA651 (citing JA788; JA800; JA773). Yet, she refused to sign the documents Union Central provided to

13

permit the funds to be paid out to the intended beneficiary.  JA651 (citing 744; JA794 (testifying "why in the hell would I ever sign a consent")).

### E. Procedural History

On November 8, 2010, Union Central filed an interpleader action.  JA10.  It named Ms. Cross and Ms. Berger, and Ms. Steinmetz, individually and as Executrix of the Estate.  JA26.  In addition to interpleader relief seeking a determination of the rightful beneficiary of the Subject Policy, Union Central asserted alternative claims seeking reformation of the Subject Policy to name Ms. Steinmetz as beneficiary. JA32-33.  Union Central twice amended its complaint.  JA11; JA13.  Ms. Cross and Ms. Berger, and Ms. Steinmetz and the Estate answered, and filed counterclaims against Union Central.  JA13; JA14.

Both Ms. Steinmetz and Ms. Cross claimed they were entitled to the $700,000 proceeds of the Subject Policy and all defendants asserted contract and tort counterclaims against Union Central.  *See* JA43-47 (Ms. Cross); JA103-115 (Ms. Steinmetz).  In addition, Ms. Steinmetz brought cross-claims against Ms. Cross.  JA95-102.  Earlier, in a letter dated March 21, 2011, counsel for Ms. Steinmetz had notified Ms. Cross that her claim on the Subject Policy "constitutes a breach of her obligations under the referenced [Settlement] Agreement, and a default thereof."  JA901.  The letter demanded Ms. Cross immediately remedy this default.  *Id.*  It warned that if she did not, Ms. Steinmetz would seek interest,

14

expenses, and costs pursuant to the fee-shifting provision in Article XVI of the Settlement Agreement. JA901-02. Ms. Cross persisted in her claim to the Subject Policy. The Estate therefore asserted cross-claims for breach of the Settlement Agreement, and unjust enrichment. JA95-98. Ms. Steinmetz also individually asserted cross-claims against Ms. Cross for unjust enrichment and tortious interference with contractual relations. JA99-102. Under the contract claim, the Estate requested specific performance of Ms. Cross's obligations to execute any documentation necessary to accomplish the transfer of the Subject Policy, or, alternatively, money damages in the amount of the policy proceeds, as well as attorneys' fees and costs. JA95-102.[6]

Union Central and Ms. Steinmetz filed motions for summary judgment on all their claims, and Ms. Cross and Ms. Berger filed a motion for partial summary judgment. JA919 (Union Central); JA634 (Cynthia Steinmetz); JA278 (Ms. Cross and Ms. Berger).

**F. The District Court Determines Ms. Steinmetz Is Entitled to the Proceeds of the Policy and that Ms. Cross Breached the Settlement Agreement.**

On September 20, 2012, the District Court issued a memorandum opinion and order on the summary judgment motions. SPA1. The District Court granted Union Central's interpleader claim and Ms. Steinmetz's motion for summary

---

[6] Ms. Cross and Ms. Berger brought unrelated cross-claims against the Estate and Ms. Steinmetz. Those were settled, JA2002, and are not at issue on this appeal.

judgment "as to [her] claim for the proceeds of the Policy." SPA28. It also granted summary judgment on the Estate's cross-claim for breach of contract against Ms. Cross. *Id.* Because the District Court awarded the proceeds of the Subject Policy to Ms. Steinmetz, it denied as moot the counterclaims by Steinmetz and the Estate against Union Central, as well as their cross-claims against Ms. Cross for unjust enrichment, and did not reach the portion of the breach of contract claim seeking specific performance or damages in the amount of the policy proceeds.[7] SPA22; SPA 26 n.14 Finally, it denied Ms. Cross's and Ms. Berger's motion for partial summary judgment. SPA28.

The District Court reasoned that even assuming that Mr. Cross did not strictly comply with the requirements of the Subject Policy for changing a beneficiary (an issue it did not decide, *see* SPA6 n.4), substantial compliance is the test in an interpleader action and it was established. SPA17. "The Policy does not specify what form 'consent' must take, and it is apparent that Decedent was aware that the Settlement Agreement provides that after he reaches age 62, his insurance obligation extends only to $1 million." SPA18. Upon turning 62, he submitted the beneficiary change request "*three times* to Union Central . . . directing on each occasion that Steinmetz be substituted as beneficiary in place of Cross and Berger – and twice received written confirmation that the change had been made . . .

---

[7] The District Court denied summary judgment on Steinmetz's tortious interference claim based on the reasoning of its order. SPA26-27.

16

Given this record it is crystal clear that Decedent intended to substitute Steinmetz as the beneficiary under the Subject Policy, and that he repeatedly took affirmative steps to accomplish this change." *Id.* (emphasis in the original). Under these facts "it was reasonable for Decedent to have believed that the beneficiary change had in fact been made." *Id.*

In addition, Ms. Cross's waiver of rights under the Settlement Agreement constituted an additional and independent ground upon which to award the proceeds of the Subject Policy to Steinmetz. As the District Court explained, "the parties set forth in detail in twelve separately numbered paragraphs their rights and obligations concerning life insurance." SPA20. The Settlement Agreement made clear that Mr. Cross's life insurance obligation was reduced from $2.2 million to $1 million after he reached age 62 and contained a waiver by Ms. Cross of any other claims upon Mr. Cross's property. *Id.* Thus, "[c]onsidering the Settlement Agreement as a whole, it is clear that Cross bargained for a death benefit of $1 million after Decedent reached age 62, and waived her right to additional life insurance benefits." SPA20-21.

The District Court then turned to the question of whether Ms. Cross had breached the Settlement Agreement. It found that Mr. Cross upheld his end of the bargain by "perform[ing] his obligations . . . as they relate to life insurance." SPA23. "[Ms.] Cross, however, has not performed her obligations under the

17

Settlement Agreement." *Id*. Under the terms of that Settlement Agreement, when Mr. Cross died at the age of 65, Ms. Cross was only entitled to $1 million in insurance proceeds. *Id*. "Now, having received the $1 million life insurance death benefit that she bargained for, [Ms.] Cross claims that she is entitled to more." *Id*. Ms. Cross's claim on the Subject Policy violated "multiple" clauses of the Settlement Agreement. *Id*. Having determined that Ms. Cross breached the Settlement Agreement (and having already awarded the policy proceeds to Ms. Steinmetz), the District Court found that that the Estate was entitled to attorneys' fees and costs pursuant to the Settlement Agreement's contractual fee shifting provision. SPA26.

### G. The District Court Awards Attorneys' Fees and Costs.

Ms. Steinmetz and Ms. Cross submitted briefs on the appropriate amount of attorneys' fees and costs. Ms. Steinmetz sought $271,215.50 in attorneys' fees and $8,079.67 in costs. JA1912. Ms. Cross opposed the amount sought, arguing principally that the fees were excessive or that the motion lacked sufficient support. JA1964-1971. On December 13, 2013, the District Court issued a seventeen-page memorandum of law evaluating the reasonableness of the attorneys' fees and costs sought by Ms. Steinmetz (the "Fee Order"). SPA29-45. It awarded attorneys' fees of $161,541 and costs of $8,079.67. SPA-45. On appeal, Ms. Cross raises no challenge to that analysis.

### H. Final Judgment Is Entered.

Ms. Steinmetz, the Estate, Ms. Cross, and Ms. Berger then engaged in settlement discussions regarding the remaining unresolved claims in this case – the unrelated cross-claims asserted by Ms. Berger and Ms. Cross against the Estate. *See supra*, at 15 n.6. The parties reached a settlement of those claims, and the District Court issued an amended order of dismissal on March 12, 2014. SPA-48. On April 10, 2014, Ms. Cross and Ms. Berger filed a notice of appeal, appealing from the District Court's September 20, 2012 Order on the summary judgment motions and the Fee Order. JA2003.

### SUMMARY OF ARGUMENT

The District Court properly found that Ms. Steinmetz was entitled to the proceeds of the Subject Policy for two separate and independent reasons. First, under the doctrine of substantial compliance, Ms. Steinmetz is the beneficiary of the Subject Policy. Mr. Cross was aware that he was permitted under the Settlement Agreement to reduce the insurance coverage for Ms. Cross after he turned 62. With that understanding, he took numerous affirmative steps to accomplish that change, and was informed that the change was completed. To the extent that the request was not technically compliant, due to Union Central's error, the District Court properly found that Mr. Cross substantially complied.

19

Second, Ms. Cross waived her right to the proceeds of the Subject Policy through the Settlement Agreement, which addressed in detail the parties' rights and obligations regarding life insurance. Ms. Cross agreed she would not claim anything further. The District Court properly found that waiver valid.

Finally, the District Court was correct in finding that Ms. Cross breached the Settlement Agreement by claiming the proceeds of the Subject Policy. The Settlement Agreement provides that the breaching party must indemnify the non-breaching party from any and all "expenses, costs and attorney's fees" incurred to enforce the Settlement Agreement. The District Court therefore properly awarded the Estate its attorneys' fees and costs. Ms. Cross's breach of the Settlement Agreement could also provide an alternative ground to affirm the District Court's award of the proceeds of the Subject Policy to Ms. Steinmetz, by requiring Ms. Cross to specifically perform her obligations under the Settlement Agreement to execute any documents necessary to effectuate the transfer of the policy to Steinmetz.

# ARGUMENT[8]

## I.   The District Court Properly Awarded the Subject Policy Proceeds to Steinmetz.

### A. Standard of Review

The District Court's order granting summary judgment is subject to *de novo* review, drawing all factual interferences in favor of the non-moving party.  *Deep Woods Holdings, L.L.C. v. Sav. Deposit Ins. Fund of Republic of Turkey*, 745 F.3d 619, 622-23 (2d Cir. 2014).  A grant of summary judgment is appropriate if, when the facts are viewed in the light most favorable to the non-moving party, "there remains 'no genuine dispute as to any material fact.'"  *Id.* at 623. (quoting Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).   The Court "has discretion to affirm a district's court grant of summary judgment on any ground appearing in the record."  *Id.* (citation omitted).

### B. Interpleader Actions Are Equitable Proceedings.

"[I]t is well recognized that interpleader is an equitable remedy."  *Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990); *see also William Penn Life Ins. Co. of New York v. Viscuso*, 569 F. Supp. 2d 355, 362 (S.D.N.Y. 2008) ("Although sanctioned by statute, interpleader is fundamentally an equitable remedy."); Charles A. Wright *et al.*, 7 Fed. Prac. & Proc. Civ. § 1709 (3d ed.)

---

[8] Ms. Steinmetz does not address the portions of Ms. Cross's and Ms. Berger's appellate brief that relate solely to their claims against Union Central.

21

(recognizing "the equitable nature . . . of interpleader").  In interpleader actions, courts routinely apply the doctrines of substantial compliance and waiver when determining the proper recipient of the asset in dispute.  Ms. Steinmetz is entitled to the proceeds of the Subject Policy under both doctrines.

### C. The District Court Was Not Required to Ignore the Settlement Agreement in Determining the Proper Recipient of the Subject Policy.

Ms. Cross asserts that the Settlement Agreement "has no relevance" in determining who should receive the proceeds of the Subject Policy.  Appellants' Br. at 22.  She asks this Court to ignore both the clear disposition of the parties' rights and obligations regarding life insurance under the Settlement Agreement and Mr. Cross's clear intent to name Ms. Steinmetz the beneficiary of the Subject Policy.  *Id.*  In support of this argument, Ms. Cross cites a string of cases that boil down to the uncontroversial proposition that contracts, including insurance contracts, should be "construed according to the sense and meaning of the terms which the parties have used," and that generally courts do not admit extrinsic evidence to interpret an unambiguous contract.  *Id.* (quoting *Sun Life Assur. Co. of Canada (US) v. Gruber*, No. 05-10194, 2007 WL 4457771, at *5 (S.D.N.Y. Dec. 17, 2007)).[9]

_____

[9] *See* Appellants' Br. at 22-23 (citing cases).  Ms. Cross and Ms. Berger also cite three cases that interpret the parol evidence rule: *Marine Midland Bank-S. v. Thurlow*, 53 N.Y.2d 381 (1981), *Battery Steamship Corp. v. Refineria Panama, S.A.*, 513 F.2d 735 (2d Cir. 1975) and *W.W.W. Associates v. Giancontieri*, 77

22

But Ms. Cross cites no case that stands for the proposition that when a court is faced with "the interplay between a written divorce agreement – in which rights to an insurance policy are addressed – and an insurance policy referenced in the divorce agreement," SPA19 (District Court Opinion) the court is bound by the principles of contract interpretation to disregard the divorce agreement. Nor could she, as the overwhelming weight of authority in New York and elsewhere is to the contrary. Courts routinely consider divorce settlements when determining whether a party has the right to a life insurance policy (or a similar benefit). *See, e.g.*, *Silber v. Silber*, 99 N.Y.2d 395 (2003); *Eredics v. Chase Manhattan Bank*, N.A., 100 N.Y.2d 106 (2003). Indeed, New York courts frequently award life insurance proceeds to an individual not named as beneficiary under a policy in order to satisfy an insured's obligation under a divorce agreement to provide such insurance where the insured has failed to make the beneficiary change. *See, e.g.*, *National Ben. Life Ins. Co. v. Kelly*, 554 N.Y.S.2d 523 (1st Dep't 1990); *Rogers v. Rogers*, 63 N.Y.2d 582 (1984); *see also In re First Cent. Fin. Corp.*, 377 F.3d 209, 215 (2d Cir. 2004) (noting that New York courts have imposed "constructive trusts for the benefit of first wives when husbands breached contractual obligations to maintain

---

N.Y.2d 157 (1990). But as the New York Court of Appeals has explained, "it has never been held that a written agreement between two parties excludes proof of an additional parol agreement between one of these parties and a third party." *Traders' Nat'l Bank of Rochester v. Laskin*, 238 N.Y. 535, 542 (1924).

life insurance policies naming them as beneficiaries.").  Likewise, courts often refuse to award benefits to an ex-spouse where the divorce agreement makes clear that the parties did not intend for the ex-spouse to receive the benefit – even where the decedent has forgotten to file a request to change the beneficiary or the change request has been rejected such that the ex-spouse remains the listed beneficiary at the time of death.  *See, e.g.*, *Silber*, 99 N.Y.2d 395; *Valentin v. New York City Police Pension Fund*, 792 N.Y.S.2d 22 (1st Dep't 2005) (finding ex-spouse waived right to pension plan and noting ("[t]hat the decedent did not remove his estranged wife as a named beneficiary on his pension during the last 18 days of his life is of no moment"); *In re Amarante*, 829 N.Y.S.2d 859, 864 (N.Y. Sur. 2006) ("There is clearly . . . law to support the concept that an ex-spouse may forfeit benefits, despite the current existence of a designation of beneficiary form, by virtue of matrimonial agreement.").

To the extent that Ms. Cross and Ms. Berger argue that an "irrevocable beneficiary" designation cannot be changed by the Settlement Agreement, or that the doctrine of substantial compliance does not apply to changing an "irrevocable beneficiary" designation, that argument should be rejected.  Ms. Cross cites no case adopting this rule.[10]  And courts hold to the contrary.

---

[10] *Kliamovich v. Kliamovich* is the only case cited in this section of the Appellants' Brief which addresses a change request involving an "irrevocable beneficiary."  85 A.D.3d 867, 868 (2d Dep't 2011).  That case is easily distinguishable, for two

In *Kilgus v. Minnesota Mut. Life Ins.*, No. 05-7279, 2006 WL 2472929 (N.D. Ohio Aug. 24, 2006), the court addressed remarkably similar facts – and reached the same conclusion to the District Court here. The decedent was obligated to maintain life insurance naming his ex-wife as "an irrevocable beneficiary" until she remarried. *Id.*, at *3. When she did so, he requested a change in beneficiary form. *Id.* The insurance company did not process his request. *Id.* The court found:

> [The decedent']s obligation to [his ex-wife] was no longer irrevocable. [The decedent] could change the beneficiary of the life insurance policy if he chose to do so. . . . The failure of [the insurance company] to effectuate the change in beneficiary until after [decedent's] death does not defeat the change. Because [his ex-wife] was no longer a beneficiary, the contractual obligation between [the insurance company] and [decedent's ex-wife] was terminated.

*Id.* Here, by contrast, the facts are even more compelling since Union Central did process the form and confirm that the change had been made.

Similarly, in *Chapman v. Abbot*, 251 S.W.3d 612 (Tex. Ct. App. 2007), decedent promised in a divorce agreement to maintain $50,000 in life insurance for the irrevocable benefit of his ex-wife "as long as alimony is payable." *Id.* at 620. The decedent named his wife irrevocable beneficiary

---

reasons. First, it was not an interpleader action and therefore did not consider the doctrine of substantial compliance. Second, it did not address a situation where the beneficiary only had the right to remain a policy's "irrevocable beneficiary" until a certain point in time under a separate settlement agreement.

as required. *Id.* After his alimony obligations ceased, the insured's attorney-in-fact sought to change the beneficiary. *Id.* The insurer filed an interpleader action and the court determined that under the terms of the divorce agreement, the decedent had the right to change the policy after he made his last alimony payment, enforcing the beneficiary change. *Id.* at 616. The Texas Court of Appeals affirmed.[11]

Just as in those cases, the District Court properly looked at both the Subject Policy and the Settlement Agreement in determining that the proper recipient of the proceeds of the Subject Policy was Ms. Steinmetz.

---

[11] Appellants also briefly argue that Ms. Cross's rights in the Subject Policy vested after Mr. Cross's death and could not be altered. Appellants' Br. at 30-31. This argument obviously "begs the question presented." *Lamarche v. Metro. Life Ins. Co.*, 236 F. Supp. 2d 34, 49 (D. Me. 2002). While Ms. Cross claims she is the beneficiary of the Subject Policy, Ms. Steinmetz also contends that *she* is the proper beneficiary of the Subject Policy, and *her* rights to it have now vested. A named beneficiary's interest vests after a decedent's death "*unless* there was a valid change of beneficiary . . . or as the result of the decedent's intent to effectuate a change of beneficiary." *Molfetta v. Connecticut Gen. Life Ins. Co.*, 138 N.Y.S.2d 168, 170 (N.Y. Sup. Ct. 1954) (emphasis added). New York courts routinely determine whether a named beneficiary is the appropriate recipient of an insurance policy or other benefit *after* the decedent's death and take into account waivers of right in a separate divorce agreement in doing so. *See supra*, at 23-24.

**D. Ms. Steinmetz Is Entitled to the Subject Policy's Proceeds Under the Doctrine of Substantial Compliance.**

    1. <u>The Doctrine of Substantial Compliance</u>

As the District Court explained, the method specified in an insurance policy must generally be followed to effect a beneficiary change.[12] SPA17. The primary purposes of this rule are to protect the insurer from potential multiple liability and to prevent "rank speculation regarding the wishes of the decedent." *McCarthy v. Aetna Life Ins. Co.*, 92 N.Y.2d 436, 440 (1998); *see also Lincoln Life & Annuity Co. of New York v. Caswell*, 31 A.D.3d 1, 6, (1st Dep't 2006)("[A] primary purpose of specifying a procedure for changing beneficiaries is to protect the insurer from double liability").

However, when an insurer institutes an interpleader action, it waives strict compliance with the policy's terms. *MetLife Life & Annuity Co. of Connecticut v. Sobie*, 326 Fed. App'x 3, 5 (2d Cir. 2009) (applying New York law). "Instead, a change of beneficiary will be effective where there has been substantial compliance with the policy." *Id.*; *see also McCarthy*, 92 N.Y.2d at 440-41; *Lopez v. Massachusetts Mut. Life Ins. Co.*, 170 A.D.2d 583, 584 (2d Dep't 1991); *Cable v. Prudential Ins. Co. of Am.*, 89 A.D.2d 636 (3d Dep't 1982).

_____

[12] Appellants spend pages citing cases for this noncontroversial proposition. *See* Appellants' Brief at 25-27.

As New York's highest court has explained, "[t]he paramount factor in resolving the controversy is the intent of the insured." *McCarthy*, 92 N.Y.2d at 440. In addition to intent, "there must be some affirmative act or acts on the part of the insured to accomplish the change." *Id.* "[I]f the decedent has done all that was reasonably possible to do to show his intention to comply with the policy requirements, then substantial compliance with the terms of the policy will suffice to demonstrate the policyholder's intent." *Id.* at 440-41.

 2. Mr. Cross Intended to Name Ms. Steinmetz the Beneficiary of the Subject Policy and Took Multiple Affirmative Acts to Accomplish the Change.

As the District Court held, it is "crystal clear" that Mr. Cross intended to name Ms. Steinmetz the beneficiary of the Subject Policy. Mr. Cross knew that until he turned 62, he was required to maintain the Subject Policy for Ms. Cross's "irrevocable" benefit. JA227. After that date, he was not. *Id.* It is undisputed that a few months after his sixty-second birthday in 2007, Mr. Cross met with his insurance broker, Ms. Slavutin, and indicated a desire to change the beneficiary of the Subject Policy to Cynthia Steinmetz. JA844-46. She prepared a "Policyowner's Change and Service Request" form for him, he signed it and, she submitted the change request to Union Central. JA601. The form nowhere indicated that the signature of a beneficiary labeled as irrevocable was required to be included; nor did Ms. Slavutin inform him it was. JA601; JA1362-63; JA1365.

Union Central, which had the relevant section of the Settlement Agreement in its files, JA888-94, received and reviewed the form, asked for the correct spelling of Ms. Steinmetz's name and for an additional signature by Mr. Cross, following which Mr. Cross resubmitted the form twice more, making the corrections, JA868; JA870-72; JA874-78. As Union Central has conceded, to the extent any information was missing (including any consent), it should have informed Mr. Cross. JA823-27; JA830-31; JA832. It did not. Instead, Union Central sent Mr. Cross two written documents confirming that the change of beneficiary was "complete" and suggesting that he retain the documents for a "permanent record" of the change. JA880; JA884.

Courts generally find a lack of substantial compliance where – unlike here – it is impossible to divine the decedent's intent with certainty or where the decedent took no steps to inform the insurer of his intended change. For example, where a beneficiary designation form is found in an insured's files, but it was never submitted to the insurance company; where the insurance company has unambiguously rejected a beneficiary change request and the insured takes no steps to correct the change for a prolonged period; where a person holding a power of attorney attempts to make a beneficiary change but has no authority to do so; or where the decedent leaves insurance policies to another in a will but makes no

effort to contact the insurance company itself to change the beneficiary.[13] These are the fact patters of the various cases relied on by Appellants.[14]

By contrast, where an insured himself submits or attempts to submit a beneficiary change request to the insurer regarding the specific policy and the request is not rejected, substantial compliance generally is found even where the request is in some way deficient. *E.g.*, *Lopez*, 170 A.D.2d at 584 (substantial compliance where insured sent handwritten letter requesting change rather than

_____

[13] Testamentary dispositions raise unique policy considerations because they are not designed to alert the insurer of the decedent's desired change. Thus, there "would always be a question as to whom the proceeds of the insurance should be paid" since "a will might later be probated designating a different disposition of the fund." *McCarthy*, 92 N.Y.2d at 441. This would result in insurers uniformly adopting policies that would postpone payments. So New York has concluded that testamentary disposition cannot alter a beneficiary designation under a policy. *Id.* Here, by contrast, Mr. Cross repeatedly made his intent clear to the insurer Union Central directly and was informed that his change had been accepted. All policies supporting the substantial compliance doctrine are satisfied.

[14] Appellants' Br. at 30 cites *Viscuso*, 569 F. Supp. 2d at 366 (no substantial compliance where individual with power of attorney that expressly excluded ability to change beneficiaries attempted to do so as "the record was completely silent on [the decedent's] intent and . . . there [was] no suggestion that [decedent] did everything in his power (or anything at all) to change the beneficiary. . . ."); *McCarthy*, 92 N.Y.2d at 439 (no substantial compliance where "[a]t no time did the decedent alter the named beneficiary" on a specified policy, but merely left the proceeds of insurance policies to another person via his will); *John Hancock Mutual Life Ins. Co. v. McManus*, 669 N.Y.S.2d 320 (2d Dep't 1998) (no substantial compliance where insured was informed by her insurance company that her change of beneficiary form was unacceptable and given a new form, but failed to fill it out and return it); *Conn. Gen. Life Ins. Co. v. Boni*, 48 A.D.2d 621 (1st Dep't), *lv. denied*, 37 N.Y.2d 917 (1975) (no substantial compliance where insured requested change of beneficiary form in 1963, did not completely fill it out, and did not return it to insurer before he died years later).

"satisfactory" form); *Cable*, 89 A.D.2d 636 (substantial compliance where insured submitted change request but didn't send policy for endorsement as required since insured orally informed insurer he would do so before dying); *Teachers Ins. and Annuity Assoc. of America v. Bernardo*, 683 F. Supp. 2d 344, 354-55 (E.D. Pa. 2010) (applying New York law) (decedent substantially complied where he twice requested change in writing and received confirmation of change); *Lamarche v. Metro. Life Ins. Co.*, 236 F. Supp.2d 34, 48 (D. Me. 2002) (applying New York law) (substantial compliance may be satisfied where insured met with insurer, requested change, and was prepared to sign forms, but where insurer was unsure if forms were required). After analyzing New York law on the issue extensively, the *Lamarche* court explained that the key issue was whether the insured communicated the change to the insurance company prior to death and took steps designed to effectuate the change. Where that occurred, as it did here, substantial compliance was found absent an insurer's rejection of the request. *Lamarche*, 236 F. Supp.2d at 47-48.

     3. <u>Mr. Cross Substantially Complied With the Subject Policy</u>

Mr. Cross substantially complied with the Subject Policy when he requested three times that the beneficiary designation be changed to Ms. Steinmetz and twice received confirmation that the change had been completed. As the District Court

properly found, Mr. Cross obviously intended to substitute Ms. Steinmetz as the beneficiary of the Subject Policy.  SPA18.

While the Subject Policy required the consent of the irrevocable beneficiary to the change, it did not define what form that consent needed to take or discuss who – the insured or Union Central – needed to obtain it.  As discussed above, the Settlement Agreement dealt in excruciating detail with Mr. Cross's insurance obligations.  Mr. Cross's obligation to provide $2.2 million in insurance ceased when he turned 62.  After that, he was required to provide only $1 million.  Ms. Cross renounced any interest in Mr. Cross's property – including the Subject Policy – not provided to her through the Settlement Agreement, as if she had predeceased him.  JA238.  As the District Court explained, Mr. Cross was aware of these terms when he requested the beneficiary change. SPA18.  Union Central, for its part, was also aware of the Settlement Agreement's terms and had a copy of the relevant portion of the agreement.

To the extent that Mr. Cross's efforts did not strictly comply with the Subject Policy's requirements because the Settlement Agreement does not constitute the form of consent ordinarily required by Union Central (which Ms. Steinmetz and the Estate do not concede), Mr. Cross was thwarted from strictly complying not by his own actions, but by those of Union Cross, which – due to a claimed "clerical error" – informed him *twice* that he had successfully changed the

32

beneficiary of the Subject Policy. Under these circumstances, Mr. Cross "d[id] all that was reasonably possible to do to show his intention . . . to comply with the policy requirements." *McCarthy*, 92 N.Y.2d at 440 (internal punctuation and citation omitted).[15]

The District Court correctly considered Union Central's actions in reaching its conclusion. Other courts have also found substantial compliance where the insurance company's actions contributed to the insured's lack of awareness that the beneficiary designation did not strictly comply with policy procedures. For instance, in *Bernardo*, 683 F. Supp. 2d at 347 (applying New York law), the decedent had several benefit accounts with Teachers Insurance and Annuity Association – College Retirement and Equities Fund ("TIAA-CREF"). *Id.* at 346. He initially named his wife as his beneficiary. *Id.* He then separated from his wife and moved in with his partner (with whom he would live until his death). *Id.* After the separation, the decedent submitted a form naming his partner as the primary beneficiary of his TIAA-CREF policies. *Id.* at 347. TIAA-CREF responded that this form was improper. *Id.* It also, in what the court found "can at best be viewed as a clerical error," informed the decedent that "'[t]he data in our

---

[15] Ms. Cross has no right to complain about any technical deficiency since her right to benefits under the Subject Policy was created by the Settlement Agreement and only existed until Mr. Cross reached the age of 62. She thus consented to Mr. Cross's reduction of the life insurance for her benefit from $2.2 million to $1 million once he reached that age.

records concurs with the information provided on this application.'" *Id.* Several years later, the decedent again named his partner as his beneficiary. *Id.* at 348. TIA-CREFF contended that designation was not effective, but five years later notified decedent again that his partner was his primary beneficiary. *Id.* The court applied New York law,[16] and found that the decedent substantially complied with the policy, as he twice sent written notice to TIAA-CREF "communicating his intent to designate [his partner] as his beneficiary." *Id.* at 354. "Considering the responses he received from TIAA-CREF *twice* confirming his designation, we find that [the decedent] did everything he could do to change his beneficiary from his ex-wife to [his partner] . . . satisf[ying] the substantial compliance test." *Id.* at 354-55 (emphasis in the original).[17]

Ms. Cross argues that substantial compliance is not satisfied because when Mr. Cross attempted to name Ms. Steinmetz as his beneficiary, he "was not prevented from doing so by matters beyond his control." Appellants' Br. at 29 (original emphasis omitted). This is simply false. Union Central twice confirmed that Mr. Cross successfully changed the beneficiary of the Subject Policy to Ms.

---

[16] The court also examined Pennsylvania and federal common law, but found that law did not differ from New York's substantial compliance test. *Id.* at 350-51.

[17] *See also Lamarche*, 236 F.Supp.2d at 39 (issue of fact as to substantial compliance where insured met with insurance company representatives to inform them of desire to change beneficiaries, to show them relevant changes to her will and sign "sign any paperwork required to make these changes effective" and insurance company representatives didn't know how to handle the situation).

34

Steinmetz. Union Central's error was unquestionably not within Mr. Cross's control. In the absence of that error, Mr. Cross could have asked Ms. Cross for her consent – which she was required to provide under the Settlement Agreement – and if necessary, obtained a court order demanding it.

Ms. Cross also argues it is irrelevant that Ms. Steinmetz and Union Central sought her consent to make Ms. Steinmetz the beneficiary of the Subject Policy, as under the terms of the Subject Policy a beneficiary change must be made before the owner dies. *See* Appellants' Br. at 30-31. This argument misunderstands the District Court's ruling. The District Court discussed the fact that the Estate and Union Central asked for Ms. Cross's consent not in the context of the doctrine of substantial compliance, but rather when it determined Ms. Cross had breached the Settlement Agreement. SPA24. Ms. Cross's obligations under the Settlement Agreement continued after Mr. Cross's death. Under Article XV ¶ 2 of the Settlement Agreement:

> In the event that, notwithstanding the renunciation and disclaimer [in the settlement agreement], [Ms. Cross] receives any right, title or interest in any property so renounced or disclaimed for any reason whatsoever, then, [Ms. Cross] shall immediately transfer all such right, title or interest to *the estate* of [Mr. Cross].

JA-239 (emphasis added). The Settlement Agreement further provides in Article XV ¶ 1 that Ms. Cross releases all claims on Mr. Cross's property, "as if [Ms. Cross] had died during the lifetime of [Mr. Cross]." JA238. Thus, Ms. Cross's

35

obligation under the Settlement Agreement to disclaim any interest in the Subject Policy was still binding after Mr. Cross's death.[18]  (As Section II will show, Ms. Cross breached that obligation).

### E. The District Court Properly Found that Ms. Cross Waived Her Claim on the Subject Policy Through the Settlement Agreement

#### 1. Ms. Cross Waived Her Right to the Subject Policy Under the Settlement Agreement

"It is well-established that, under New York law, a designated beneficiary may waive his or her right to survivorship benefits [through a divorce agreement] so long as the waiver is 'explicit, voluntary and made in good faith.'" *Hallingby v. Hallingby*, 453 F. App'x 121, 124 (2d Cir. 2012) (quoting *Silber*, 99 N.Y.2d at 404).  In *Hallingby*, the Second Circuit considered a case in which the decedent's former wife had waived the right to certain annuities pursuant to their divorce agreement, but received the survivorship benefit to those annuities after the decedent's death.  453 Fed. App'x at 123.  Unlike here, where the Subject Policy

---

[18] The two 1920s cases cited by Ms. Cross and Ms. Berger – *Schoenholz v. New York Life Insurance Co.*, 234 N.Y. 24, 29 (1922) and *Strianese v. Metropolitan Life Insurance Co.,* 221 A.D. 81 (1st Dep't 1927) – are both legally and factually distinguishable.  They are not interpleader cases, and in both, the courts found that the decedent *had not* substantially complied with the policy's rules on changing beneficiaries. *Schoenholtz*, 234 N.Y. at 30 (explaining that there was "no finding or the slightest evidence to indicate that she ever . . . made any attempt to secure such change of beneficiary. . . ."); *Strianese*, 221 A.D. at 83 (no substantial compliance where beneficiary change request wasn't submitted to insurer).  By contrast, here there was substantial compliance; there was also a binding Settlement Agreement under which Ms. Cross's obligations continued even after Mr. Cross's death.

provided that an irrevocable beneficiary could be changed with consent, in that case, the terms of the annuities stated that the decedent did "not have the right to change the survivor annuitant for any reason" after the benefits vested. *Id.* Applying New York law, the Second Circuit considered the terms of the divorce settlement when determining whether the decedent's former wife had the right to the annuities – and found that because she had waived the right to the annuities through her divorce settlement, she could not claim them and breached the divorce agreement in attempting to do so. *Id.* at 124-125.[19]

As the New York Court of Appeals has explained, parties to a divorce agreement should get the benefit of their bargain. *Curley v. Giltrop*, 68 N.Y.2d 651, 654 (1986). In *Curley*, the decedent and his former wife divorced. *Id*. at 652. His former wife agreed that she would receive their house and certain other assets, and in return would not make a claim on his retirement benefits and life insurance policies. *Id.* However, the former wife's attorney inadvertently omitted the agreement regarding life insurance from their divorce agreement. *Id.* at 653. The decedent did not change the beneficiaries on his insurance or retirement policies before his death. *Id.* The New York Court of Appeals found that the decedent's estate, rather than his former wife, was entitled to those policies. It held:

_____

[19] Because the beneficiary designation in that case could not be changed for any reason, even with consent, the court awarded only attorneys' fees and costs against the breaching party.

> When the divorce was entered and [decedent's former wife] obtained a decree awarding her sole possession of the house, the bank account, the stocks and bonds and other assets, she received the consideration bargained for, and she became bound to fulfill her promise not to make claim for retirement program death benefits or life insurance proceeds . . . . [T]he evidence does not support [her] contention that decedent, during his life, released her from her promise. Accordingly, it was proper to award a judgment in favor of the estate[.]

*Id.* at 654.

In this case, as in *Curley*, the Court should hold the parties to their bargain: Ms. Cross waived her rights to the Subject Policy. As the District Court correctly observed, the Settlement Agreement contained twelve paragraphs spelling out Mr. and Ms. Cross's rights and obligations with respect to life insurance. SPA20; JA227-29. The Settlement Agreement then provided a number of releases. In Article XV ¶ 1, Ms. Cross agreed to release "any and all claims of [Ms. Cross] to or upon the property of the [Mr. Cross]." JA238. In Article XV ¶ 2, she agreed to execute all documents necessary to carry out this agreement, and to immediately transfer to Mr. Cross or his estate all property she received in violation of the release. JA239. Likewise, in Article XVIII ¶ 5, she again agreed to perform any acts necessary to carrying out the purpose and terms of the Settlement Agreement. JA247. In other words, the parties agreed what Mr. Cross's obligations would be with regard to life insurance with great detail. As part of that bargain, Ms. Cross agreed to waive her rights to anything further.

38

Ms. Cross and Ms. Berger try to distort the plain language of the Settlement Agreement by arguing that the words "[e]xcept as otherwise provided for herein" of Article XV ¶ 1 "were intended to exclude [the Subject Policy]." Appellants' Br. at 34. This argument has no support in the language of the Settlement Agreement. Mr. and Ms. Cross did not intend the releases to affect the rights they had specifically bargained for – but Ms. Cross's right was not to the Subject Policy itself, but to $2.2 million in life insurance until Mr. Cross turned 62, and $1 million in life insurance after that date. JA227. Ms. Cross released her right to anything beyond $1 million after Mr. Cross turned 62.

Ms. Cross and Ms. Berger also try to read more into the Settlement Agreement than is there. They argue that the Settlement Agreement gave them "an irrevocable property right in the whole Policy." Appellants' Br. at 35. They also assert that under the Settlement Agreement, Mr. Cross "effected an indefeasible transfer of any property interest he had in the Policy." *Id.* This Court should reject Ms. Cross's and Ms. Berger's attempt to add terms to Settlement Agreement which it does not have. The Settlement Agreement is straightforward. Mr. Cross contracted to:

> [M]aintain and keep in full force and effect until age 62 insurance on his life having an aggregate death benefit of Two Million Two Hundred Thousand ($2,200,000.00) Dollars which shall be for the irrevocable benefit of [Ms. Cross] until her death or until [Mr. Cross] is age 62 and thereafter for the irrevocable benefit of the parties' child . . . until [Mr. Cross] is age 62.

39

JA227. Under the plain language of the Settlement Agreement, Mr. Cross was obligated to maintain the Subject Policy "for the irrevocable benefit of [Ms. Cross] . . . *until [he] is age 62*." *Id.* (emphasis added). There is nothing in the Settlement Agreement about "irrevocable property rights" or "indefeasible transfers." While Ms. Cross attempts to rely on a pair of forty-year-old New York trial court decisions to support her argument, neither is applicable. *See* Appellants' Br. at 35 (citing *Stanford v. Union Labor Life Ins. Co.,* 74 Misc.2d 781, 786 (N.Y.Sup.Ct. 1973) and *Matter of Marra v. Marra*, 53 Misc.2d 808, 809 (N.Y.Sup.Ct. 1967)). The cited portions of both cases address procedural issues.[20] The District Court properly found that the plain language of the Settlement Agreement waived Ms. Cross's right to the Subject Policy.

    2. <u>The Waiver Is Sufficiently Explicit</u>

This waiver is valid under New York law.[21] A waiver in a settlement agreement must be sufficiently explicit to be binding. *Hallingby*, 453 F. App'x at 124; *Diversified Inv. Advisors, Inc. v. Baruch*, 793 F. Supp. 2d 577, 581 (E.D.N.Y. 2011). For example, in *Eredics*, the New York Court of Appeals found no waiver

---

[20] To the extent that Ms. Cross argues here that her rights to the Subject Policy have vested, see *supra*, at 26 n.11.

[21] As discussed above, to be valid, a waiver must be "explicit, voluntary and made in good faith." *Hallingby*, 453 F. App'x at 124 (citation omitted). Ms. Cross and Ms. Berger do not contest that this waiver was voluntary and made in good faith. Appellants' Br. at 38-39.

in a separation agreement to several trusts where the separation agreement stated it was a "final division of all the items of property owned by the parties," but did not address the trusts in dispute at all. 100 N.Y.2d at 112-13 (punctuation omitted). It explained that in determining whether there was a valid waiver, it was "[g]uided by . . . considerations of fairness in effectuating the clear intent of the parties," and would not infer a waiver where the parties had not made clear they intended one. *Id.* at 111.

By contrast, in *Silber* the New York Court of Appeals found there had been a valid waiver of a pension benefit where the parties had specifically agreed on their rights and obligations regarding these benefits. 99 N.Y.2d at 405. In *Silber*, the decedent and his former wife agreed in their divorce decree that she would receive 50% of his pension death benefits. *Id.* at 398. He eventually remarried, and named his wife and former wife each the beneficiary of 50% of these death benefits. *Id.* at 399. In 1998, he had not retired, and at the request of his former wife, created annuities that would give her immediate access to the money in his pension plans. *Id.* The parties then created an agreement that led to a qualified domestic relations order ("QDRO"), which stated that it superseded previous agreements and contained a release. *Id.* at 399-400. The decedent died without changing the beneficiaries on his pension plans. *Id.* at 400. The New York Court

of Appeals found that the decedent's former wife validly waived her interest in his pension benefits. *Id.* at 404.

As in *Silber*, the parties in this case carefully negotiated their respective rights and obligations as to a specific category of benefits – in this case, with regard to Mr. Cross's life insurance. Their clear intent was to release each other from any further obligations with regard to life insurance, and they effectuated that intent through a clear release in their settlement agreement. "Considering the Settlement Agreement as a whole, it is clear that Cross bargained for a death benefit of $1 million after Decedent reached age 62, and waived her right to additional life insurance benefits." SPA20-21 (District Court Opinion).

This Court should find that the Settlement Agreement effectuated a waiver by Ms. Cross of any interest in Mr. Cross's life insurance other than that spelled out by the agreement. Under that waiver, Ms. Cross has no right to the Subject Policy. *See Curley*, 68 N.Y.2d at 652-64 (even though no explicit waiver in settlement agreement, court effectuated parties' clear intent that decedent's former spouse would waive any interest in his insurance benefits);[22] *In re Estate of Sbarra*, 17 A.D.3d 975, 977 (3d Dep't 2005) (where pursuant to a QDRO,

---

[22] Ms. Cross and Ms. Berger are wrong that *Curley* is distinguishable because "the ex-wife's rights to insurance, unlike here, had been specifically waived under their divorce agreement." Appellants' Br. at 38. As discussed above, although in *Curley* the parties agreed that the decedent's former wife would not have the right to benefit from his insurance policy, through the error of the former wife's attorney, that provision was omitted from the divorce decree. *See supra*, at 37-38.

decedent's ex-wife received certain pension assets, but not others, there was no
"doubt as to respondent's right to receive some – but not all – of the pension plan
assets" and she waived her right to anything further). [23]

Ms. Cross argues that this waiver was not sufficiently explicit because the
release did not mention the Subject Policy by name. Appellants' Br. at 39. The
majority of courts that have considered the matter have found no such requirement
in New York law. *See, e.g., Diversified*, 793 F. Supp. 2d at 581-82 (finding waiver
of annuity in separation agreement even though agreement lacked "express
reference to the particular annuity at issue" and reviewing case law on same). Ms.
Cross also cites *Gallo v. Gallo*, 6 Misc. 3d 628 (N.Y. Sur. Ct. 2004) and *Primerica*

---

[23] On appeal, Ms. Cross argues that it is somehow relevant that Ms. Cross broadly
waived all rights not provided for in the Settlement Agreement, including as to any
"death benefit," while Mr. Cross's similar broad waiver included language both as
to any "death benefit" and to "life insurance." Appellants' Br. at 35-37. They
argue that it was "reversible error" for the District Court to fail to "recognize and
give meaning to the absence of this specific and identical language in [Ms.] Cross'
waiver." *Id.* at 36-37. First, it is not clear how this is relevant. Even if this Court
disregards the "death benefit" language in the releases, Ms. Cross still waived her
rights to any life insurance benefit not explicitly provided for in the Settlement
Agreement through the release. Second, although Ms. Cross argues the District
Court should have applied the doctrine of *expresio unius est exclusion alternius*,
she did not argue that doctrine to the District Court. This Court therefore should
decline to consider it. *United States v. Lauersen*, 648 F.3d 115, 115 (2d Cir. 2011).
Third, even if the Court were to consider this argument, it is not persuasive. The
parties' rights and obligations as to life insurance were not symmetrical: Mr.
Cross was obligated to obtain life insurance for Ms. Cross's benefit; Ms. Cross was not.
Their waivers are similarly worded differently. The overall agreement remains
clear: Ms. Cross agreed to renounce any life insurance benefit from Mr. Cross
other than that explicitly bargained for by the Settlement Agreement. That
included any interest in the Subject Policy after Mr. Cross turned 62.

*Life Ins. Co. v. Roemer*, No. 2810/2001, 2003 WL 21709724 (N.Y. Sup. Ct. July 16, 2003). *See* Appellants' Br. at 38-39. These cases stand for the proposition that where a separation or divorce agreement does not address a benefit at all, but does contain a generalized waiver, New York courts have generally declined to enforce the generalized waiver. *Gallo*, 6 Misc. 3d at 630 (no waiver of life insurance benefits where "the separation agreement provides explicit mention of certain categories of property interests [but] is silent regarding life insurance"); *Roemer*, 2003 WL 21709724, at *2 (same).[24] These cases are easily distinguishable from the facts here. Rather than remaining "silent" on the issue of life insurance, the settlement agreement explained in depth Mr. Cross's obligations on that issue and Ms. Cross waived her right to anything more. Although Ms. Cross argues she is entitled to more than she bargained for, she is not. Ms. Cross waived her right to the Subject Policy.

---

[24] *See also Smith v. Pathmark Stores, Inc.*, 57 A.D.3d 759 (2d Dep't 2008) (general release in stipulation entered into by decedent and his former wife not sufficient to effectuate waiver to 401K plan). *But see Mohawk Airlines, Inc. v. Peach*, 61 A.D.2d 346, 349 (4th Dep't) (general waiver in separation agreement sufficient to find waiver of claim on two retirement plans), *lv. denied*, 44 N.Y.2d 838 (1978).

II.   **Ms. Cross Breached the Settlement Agreement, Entitling the Estate to Fees and Costs, as Well as Specific Performance and/or Damages.**

   **A.  Standard of Review**

The District Court's order granting summary judgment in favor of the Estate and against Ms. Cross on its breach of contract claim is subject to *de novo* review. *Deep Woods Holdings, L.L.C.*, 745 F.3d at 622-23.  Assuming the District Court's finding of breach is affirmed, this Court will only overturn the District Court's finding regarding the amount of fees and costs for abuse of discretion.  *Reiter v. MTA New York City Transit Auth.*, 457 F.3d 224, 229 (2d Cir. 2006).

   **B.  The District Court Correctly Found that Ms. Cross Breached the Settlement Agreement.**

As the District Court properly found, it was undisputed that the Settlement Agreement is a valid contract, and that Mr. Cross performed his obligations under that contract.  SPA23.  Despite the fact that Ms. Cross got the benefit of her bargain under the Settlement Agreement – including coverage under the Subject Policy until Mr. Cross turned 62, and the proceeds of the $1 million Union Central policy after that – she nevertheless claimed the proceeds of the Subject Policy after his death.

By asserting claims to the Subject Policy and refusing the request by Union Central and by the Estate to consent to Union Central's payment of the proceeds of the Subject Policy to Ms. Steinmetz, Ms. Cross breached her obligations under the

45

Settlement Agreement. Ms. Cross promised under Articles XV and XVIII of the Settlement Agreement not to claim life insurance benefits belonging to Mr. Cross beyond those provided under the agreement. She was bound by those promises. *See Naginsky v. State Farm Life & Acc. Assur. Co.*, 231 A.D.2d 695, 697 (2d Dep't 1996) (where former wife waived right to life insurance through settlement agreement, when she "received the consideration bargained for, she became obligated to fulfill her promise not to make a claim for the subject life insurance proceeds"); *Doyle v. Sullivan*, 176 A.D.2d 55, 58 (4th Dep't 1992) (when former spouse through settlement agreement renounced claim to death benefits, when she "received the consideration bargained for [] she became bound to fulfill her promise not to make a claim for retirement program death benefits") (internal citation and punctuation omitted).

In the section of the Settlement Agreement discussing life insurance, Ms. Cross is unambiguously required to execute any documents necessary to ensure that she is an "irrevocable beneficiar[y] *to the extent hereinbefore set forth*." JA134 (emphasis added). Yet, she has asserted irrevocable beneficiary status beyond what was "set forth." She promised that except for the property provided to her in the Settlement Agreement, including her right to $1 million in insurance proceeds after Mr. Cross turned 62 (which she received), she would not make any "claims . . . to or upon the property of the Defendant . . . to the end that he shall have free and

unrestricted right to dispose of his property now owned or hereafter acquired, *free from any claim* or demand of the Plaintiff and so that his estate and all income therefrom derived or to be derived shall go and belong to the person or persons who become entitled thereto by gift, devise, bequest, intestacy, administration or otherwise, as if the Plaintiff had died during the lifetime of the Defendant[.]" JA145 (emphasis added). Yet, Ms. Cross makes claims upon property to which she is not entitled under the Settlement Agreement. She agreed to "execute any and all documents which shall be required . . . in order that such renunciation and disclaimer shall be effective" and to pay over to the Estate any property that might nevertheless fall into her possession. *Id*. Yet, she refused the requests by both Union Central and the Estate to desist in making claims on the Subject Policy and to execute any documents deemed necessary by Union Central to make the transfer. Finally, Ms. Cross agreed to "execute and deliver any and all further instruments and assurances and perform any acts that the other party may reasonably request for the purpose of giving full force and effect to the provisions of this Agreement." JA154. The purpose of the Settlement Agreement was to allow Mr. Cross to decrease his life insurance for the benefit of Ms. Cross at the age of 62. Yet, as described above, Ms. Cross has refused the Estate's request to execute documents Union Central deemed necessary to carry out that purpose. On

these facts, the District Court's conclusion that Ms. Cross breached "multiple provisions" of the Settlement Agreement was entirely proper. SPA23.

Having concluded that Ms. Cross breached the Settlement Agreement, the District Court properly exercised its discretion to award Ms. Steinmetz her attorneys' fees and costs in this action. It is an abuse of discretion to award attorneys' fees only if there is "an error of law or a clearly erroneous factual finding, or [the District Court's] decision cannot be located within the range of permissible decisions." *Hallingby*, 453 Fed. App'x at 125 (internal punctuation and citation omitted). Here, the Settlement Agreement has a fee-shifting provision in its Article XVI:

> In the event that either party defaults with respect to any obligation under this Agreement and said default is not remedied within ten (10) business days after the sending of a written notice to the defaulting party specifying said default, the defaulting party agrees to indemnify the other party against or to reimburse such other party for any and all expenses, costs and attorney's fees resulting from or made necessary by the bringing of any suit or other proceeding to enforce any of the terms, covenants or conditions of this Agreement to be performed or complied with by the defaulting party or to enforce any of the other party's rights to recover any amount to be paid to him or her by the defaulting party pursuant to this Agreement, provided such suit or other proceeding results in a judgment, decree or order in favor of the party seeking to enforce said indemnity.

JA152. As discussed above, after Ms. Cross refused Union Central's request that she disclaim any right in the proceeds of the Subject Policy, Ms. Steinmetz (as executrix of the Estate of Mr. Cross) sent her notice that she was in default of the

48

Settlement Agreement, and demanded that she remedy that default. JA901-02. Ms. Cross did not. Therefore, Ms. Steinmetz was forced to litigate this case through to the eventual judgment in her and the Estate's favor. The District Court did not abuse its discretion in awarding Ms. Steinmetz her attorneys' fees and costs under the terms of the Settlement Agreement. SPA26.

Ms. Cross had the opportunity to contest the amount of those attorneys' fees and costs before the District Court, and she did so. On appeal, she does not challenge the District Court's decision regarding the reasonableness of the fees, arguing only that even if she "technical[ly] breach[ed]" the Settlement Agreement, this Court should in its equitable discretion reverse the District Court's award of fees. Appellants' Br. at 39. She offers no case law to support her claim that this Court may use its equitable discretion to ignore a contractual fee-shifting provision. She simply asks this Court to disregard the terms of the Settlement Agreement. The District Court's award of attorneys' fees and costs was proper.

**C.     Ms. Cross's Breach Also Provides an Alternative Ground for Awarding the Subject Policy Proceeds to Steinmetz.**

Having found that Ms. Cross indisputably breached the Settlement Agreement, the District Court awarded fees and costs as a remedy. Ms. Steinmetz had also sought other contract remedies, including damages to the Estate in the amount of the policy proceeds or specific performance to require Ms. Cross to carry out the contract and execute the forms necessary to enforce her release and

49

carry out the intent of the Agreement.  *E.g.*, Steinmetz Mem. of Law in Support of Summary Judgment at 13, Docket 57.  The District Court did not reach the issue of these other remedies for the breach, having already decided that Ms. Steinmetz was the rightful beneficiary of the proceeds of the Subject Policy on other grounds.  If this Court were to reverse that decision, due to a perceived technical defect in the beneficiary change process, then the issue of obtaining a comparable remedy for the breach of contract would have to be decided.  This Court could direct the District Court to do so on remand, as discussed below.  Alternatively, because the breach is established, this Court could order those remedies now as an alternative ground for affirming the judgment for the reasons argued in the District Court.

III.    **Should the Court Not Affirm, Remand Is Required On Claims Not Reached or Denied As Moot By the District Court.**

Because the District Court awarded the proceeds of the Subject Policy to Ms. Steinmetz on the grounds of substantial compliance with the policy terms and waiver by Ms. Cross, it did not reach a number of claims made by the parties.  The District Court did not reach Union Central's claims for reformation of the Subject Policy to name Ms. Steinmetz as beneficiary as reformation was unnecessary under its analysis.  In addition, the District Court did not consider on the merits any of the contract or tort counterclaims asserted by Ms. Steinmetz and the Estate against Union Central.  The District Court noted that Union Central was "negligent,"

50

SPA13 n.10, and explained that any argument by Union Central that it should be "absolved" of direct liability for its own conduct in accepting the beneficiary designation "would not be well taken," SPA13. But, "[b]ecause this Court has determined that Steinmetz is entitled to the Policy's proceeds, all of these counterclaims will be denied as moot." SPA22. For the same reason, the District Court denied the cross-claims asserted by the Estate and Ms. Steinmetz against Ms. Cross sounding in unjust enrichment "as moot" because Ms. Cross would not under the District Court's decision receive the policy proceeds. SPA26 n.14. Similarly, while the Court found that Ms. Cross breached the Settlement Agreement, as discussed above, it did not address the Estate's claim that she was required to specifically perform her obligations under the Settlement Agreement to execute any documents deemed necessary to transfer the proceeds to Ms. Steinmetz in order to effectuate the purposes of the agreement or alternatively, should pay equivalent monetary damages to Ms. Steinmetz.

In the event the Court does not affirm the District Court's summary judgment award finding that Ms. Steinmetz is the beneficiary under the Subject Policy under the doctrine of substantial compliance and that Ms. Cross waived her rights to the Subject Policy, on remand the District Court will need to address all of these issues.

## CONCLUSION

The judgment should be affirmed. Upon issuance of the mandate, Ms.

Steinmetz will then return to the District Court to seek a supplemental award of

attorneys' fees for this appeal as provided for under the Settlement Agreement.

Respectfully submitted,

WIGGIN AND DANA LLP
Attorneys for Cynthia Steinmetz,
individually and as administratrix
of the Estate of Wayne A. Cross

Dated:   October 20, 2014                     By: s/Kim E. Rinehart
                                              Kim E. Rinehart
                                              WIGGIN AND DANA LLP
                                              265 Church Street
                                              P.O. Box 1832
                                              New Haven, CT 06508-1832
                                              (203) 498-4400
                                              (203) 782-2889 (fax)
                                              krinehart@wiggin.com

**Federal Rules of Appellate Procedure Form 6. Certificate of Compliance With Rule 32(a)**

**Certificate of Compliance With Type-Volume Limitation,**

**Typeface Requirements and Type Style Requirements**

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

☒ This brief contains 13,100 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), **or**

☐ This brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because:

☒ This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point type Times New Roman type style, **or**

☐ This brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: October 20, 2014                 s/ Kim E. Rinehart

                                               Kim E. Rinehart

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on October 20, 2014, the Brief of Defendant - Cross Claimant - Counter Claimant - Cross Defendant – Appellee Cynthia Steinmetz, individually and as administratrix of the Estate of Wayne A. Cross, was filed and served electronically via CM/ECF. In that the brief has been filed after the last Federal Express pick-up of the day, on the next business day, October 21, 2014, six copies of the brief will be sent via FedEx Priority Overnight to:

> Catherine O'Hagan Wolfe, Clerk
> United States Court of Appeals for the Second Circuit
> Thurgood Marshall United States Courthouse
> 40 Foley Square
> New York, NY 10007

I further certify that two copies of the brief sent via FedEx Priority Overnight to the following:

Steven Del Mauro
McElroy, Deutsch, Mulvaney & Carpenter, LLP
3 Gateway Center, 17th Floor
100 Mulberry Street
Newark, NJ 07102

Michael I. Verde
James Tampellini
Katten Muchin Rosenman LLP
575 Madison Avenue
New York, NY 10022

s/ Kim E. Rinehart
Kim E. Rinehart

21774/4/3151950.14